IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIE LEE BURRIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | )   CIV-07-938-HE |
| v. | ) |
| | ) |
| JUSTIN JONES, Director, | ) |
| | ) |
| Respondent. | ) |

REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the conviction for Possession of a Firearm After Conviction or During Probation, after former conviction of two or more felonies, entered against him in the District Court of Jackson County, Case No. CF-2004-92. Petitioner is serving a sentence of thirty years of imprisonment for this conviction. Respondent has responded to the Petition and filed the certified transcript (hereinafter "TR__") of Petitioner's jury trial. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following

1

reasons, it is recommended that the Petition be denied.

I. Background

In State of Oklahoma v. Willie Lee Burris, Case No. CF-2004-92, District Court of Jackson County, Petitioner was charged with the offense of Possession of a Firearm After Conviction or During Probation. According to the prosecutor's recitation at Petitioner's trial, the information charged that Petitioner had in his possession a black, .22 caliber automatic pistol after he had been convicted of Burglary in the Second Degree in Case No. CF-1996-8 in the District Court of Cotton County. (TR 55).

Testimony from prosecution witnesses at Petitioner's May 24, 2005 trial revealed that prior to June 18, 2004, Petitioner often spent the night with his girlfriend at his girlfriend's residence, that his girlfriend had a female roommate, and that the female roommate had minor children living in the residence as well. (TR 70-85). On June 18, 2004, Petitioner's girlfriend and her female roommate left the residence while Petitioner was watching the female roommate's three minor children. When the two women returned to the residence Petitioner got angry at his girlfriend and threatened to hit her. The female roommate advised Petitioner to leave the residence. Petitioner then pulled out a black gun from a pocket and brandished it in his right hand. The witness testified Petitioner stated that the gun was "intended for the police." The female roommate called the Altus, Oklahoma police who arrived and obtained her permission to search for the gun.

One of the female roommate's minor children testified that Petitioner "put the gun on my mom" and "[t]hat got the police to come." (TR 106). The child testified that he found

the gun for the police, and he read the statement he wrote for the police that day in which he stated that Petitioner "[p]ulled a gun on my mom and hit my mom and said cuss words. I saw where he hid the gun. The gun is black and hard. He put it in his room." (TR 106-107).

An Altus police officer testified that the police received a call that a person had been threatened with a firearm and that the person and the firearm were still at the residence. (TR 86-87). The officer further testified that when officers arrived at the residence they were advised that Petitioner had a weapon and that he was inside the residence. The officer stated that Petitioner then "came out on the front porch" and was searched to make sure he did not have the weapon on him. One of the female roommate's minor children advised police the gun was under a bed in one of the bedrooms in the residence, and the officers obtained permission from one of the residents to search the residence for the gun. The gun was described by the residents as a black, nine-millimeter-type weapon. (TR 86-88). Police retrieved the gun, which the officer testified is similar in appearance to a nine-millimeter pistol, from under a bed in the residence. (TR 88). The officer testified that the magazine of the pistol was loaded with eight rounds of ammunition. (TR 88-89).

Evidence was presented to the jury that Petitioner had a previous conviction for Burglary in the Second Degree. (TR 115-116). The jury found Petitioner guilty of the offense. (TR 146). In the second stage of the bifurcated trial, evidence was presented that Petitioner had previously been convicted of six felonies. (TR 149-155). The jury found Petitioner guilty of committing the offense after former conviction of two or more felonies and recommended punishment of thirty years of imprisonment. (TR 165). Petitioner was

sentenced on June 7, 2005, consistent with the jury's recommendation. Transcript of Proceedings Had Before the Honorable Richard Darby on the 7th Day of June, 2005 in Altus, Oklahoma 73521.

On direct appeal, Petitioner asserted that (1) he was denied his Sixth Amendment right to effective assistance of defense counsel, (2) the evidence presented at the trial was insufficient to support the conviction and denied him due process under the state and federal constitutions, (3) prosecutorial misconduct during closing arguments denied Petitioner his right to a fair trial under the state and federal constitutions, and (4) cumulative errors occurring during the trial denied Petitioner his right to a fair trial under the state and federal constitutions. Response, Ex. 1. The State of Oklahoma responded in opposition to each of Petitioner's claims. Response, Ex. 2.

In a summary opinion, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the conviction and sentence. Response, Ex. 3 (<u>Willie Lee Burris v. State of Oklahoma</u>, Case No. F-2005-562 (Okla. Crim. App. Aug. 22, 2006)(summary opinion)). With respect to Petitioner's Sixth Amendment claim, the OCCA found that Petitioner had "failed to show that trial counsel was ineffective for admitting evidence of other crimes or failing to object to evidence that he pointed the gun at [the female roommate]. Nor has he shown that trial counsel was ineffective for failing to object to the admission of his statement about the gun or failing to object to the prosecutor's closing remarks concerning the elements of felon in possession." Response, Ex. 3, at 2. With respect to Petitioner's second claim, the OCCA found without explanation that "[t]he evidence presented at trial was sufficient for a rational

trier of fact to find [Petitioner] guilty as charged." Id. As to Petitioner's claim of prosecutorial misconduct, the OCCA rejected this claim, stating only that "the prosecutor did not exceed the bounds of argument accepted by this Court during closing argument." Id. Finally, the OCCA rejected Petitioner's claim of denial of a fair trial due to cumulative errors because "there is no individual error" and therefore "there can be no accumulation of error that denied [Petitioner] his fundamental right to a fair trial." Id. Petitioner now asserts in his federal habeas Petition the same four grounds for relief he asserted in his direct appeal.

II. Standard of Review

With respect to a constitutional claim asserted in a 28 U.S.C. § 2254 petition by a state prisoner and rejected by a state appellate court, habeas relief may be awarded only if the state appellate court's adjudication of the same claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254 (d). This standard, which was adopted as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), directs the focus of judicial review to the result of the state appellate court's decision, not its reasoning. Saiz v. Ortiz, 392 F.3d 1166, 1176 (10th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). Under this standard, federal courts reviewing habeas claims that have previously been resolved on the merits in state courts must apply a "level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v.

Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)). A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion opposite to that reached by the Supreme Court on a question of law or (2) decided an issue differently than the Supreme Court has on a set of materially indistinguishable facts. Id. at 405-406. The "state court decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(*per curiam*). "[A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Id. (quoting Early v. Packer, 537 U.S. 3, 8 (2002)(*per curiam*)).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003). With respect to the "unreasonable application" requirement, "it is the habeas applicant's burden to show that the state court applied [the Supreme Court case] to the facts of his case in an objectively unreasonable manner," not merely that the state court decision applied the Supreme Court case incorrectly. Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). The AEDPA also mandates that factual findings made by a state

trial or appellate court are presumptively correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

III. Ineffective Assistance of Counsel

Petitioner contends in ground one of the Petition that he was denied his Sixth and Fourteenth Amendment rights to effective assistance of defense counsel. He supports this claim by urging that his defense attorney "introduced 'other crimes evidence' that denied Petitioner a fair trial" when counsel "during opening statements told the jury that Petitioner was charged with the crime of feloniously pointing a weapon, which had been dismissed." Petition, at 6. Additionally, Petitioner asserts that his defense counsel provided ineffective assistance when counsel "introduced 2 exhibits that stated Petitioner intended to use the gun on the police" and also allowed a prosecution witness to "testify that Petitioner was guilty of Assault and Battery." Id.

Evaluation of the effectiveness of defense counsel's assistance "requires a two-part inquiry. 'In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir. 1997)(quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). Counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance." Strickland v.

Washington, 466 U.S. 668, 689 (1984).

In consideration of the trial record in this case, it is clear that even if Petitioner's defense counsel provided professionally unreasonable assistance, Petitioner cannot show prejudice as a result of any errors by defense counsel. Most significantly, as the previous review of the evidence admitted at Petitioner's trial shows, substantial evidence of Petitioner's guilt was presented at his trial.

Petitioner's first claim of error involves his defense counsel's reference to a charge of feloniously pointing a weapon that had been dismissed at the preliminary hearing. (TR 59-60). Defense counsel's reference to the charge that had been dismissed at the preliminary hearing was careless, to be sure. However, the charge for which Petitioner was being tried also involved his possession of a firearm, and the prosecution witness testified that Petitioner did not point his gun at her. (TR 81). Moreover, the trial judge advised the jury that only one felony charge of being in Possession of a Firearm After Conviction or During Probation was being tried and to disregard defense counsel's reference to any other allegation. (TR 60). Therefore, counsel's single reference during opening arguments to a second, dismissed charge of feloniously pointing a weapon was not prejudicial to the extent that a reasonable probability exists the result of the trial would have been different except for this careless reference.

Petitioner's remaining assertions of error involve his defense counsel's cross-examination of prosecution witnesses and evidence admitted by defense counsel during these cross-examinations. At trial, Petitioner's defense counsel employed the well-recognized trial

strategy of attempting to impeach the main prosecution witness's testimony with her prior statements to police at the time of the incident. The exhibits which defense counsel used to aid in this strategy were (1) the police narrative report prepared by one of the investigating officers indicating the female roommate stated Petitioner had pulled a gun on her and pointed it at her (TR 92-93) and (2) an affidavit prepared by one of the investigating officers indicating that the female roommate told the officers Petitioner pointed and tapped her in the face with a gun. (TR 119-120). Defense counsel attempted to show that the difference between the prosecution witness's testimony and her pretrial statements to police was enough to render her trial testimony not credible. Although this defense strategy was not successful, the result of the trial does not determine the reasonableness of counsel's performance. Even if Petitioner could show that this defense strategy was objectively unreasonable, Petitioner has not shown prejudice. The witness who made these pretrial statements testified at trial that Petitioner did not point the gun at her, and the evidence of Petitioner's guilt concerning the offense with which he was charged, being in possession of the gun after a prior felony conviction, was substantial, if not overwhelming.

With respect to Petitioner's assertion that counsel was ineffective for failing to object to evidence of an assault and battery, Petitioner's brief filed in his direct appeal illuminates the claim. On appeal, Petitioner referred to the female roommate's testimony that she intervened in an argument between Petitioner and his girlfriend that had escalated after the two women returned to the girlfriend's residence. The female roommate testified that "Oh, he was yelling, you know, and cursing; and he was getting ready to hit [his girlfriend]." (TR

9

72). On cross-examination, this witness testified that she intervened because "he was trying to hit her, and I was going to prevent that is why." (TR 80). Because this testimony was directly related to the events that precipitated the criminal charge, counsel's failure to object to the testimony was not objectively, professionally unreasonable. See Reyes v. State, 751 P.2d 1081, 1083 (Okla. Crim. App. 1988)("Although something done or said by appellant during the commission of the charged offense might also constitute a crime, these statements or actions are admissible as part of the 'res gestae' if they shed light on what occurred.").

Petitioner has failed to show that his defense counsel provided constitutionally ineffective assistance, and he has not shown that the OCCA's resolution of this claim was contrary to or an unreasonable application of the governing Strickland standard.

IV. Sufficiency of the Evidence

In his second claim for habeas relief, Petitioner contends that the evidence was insufficient for the jury to have found him guilty of the offense beyond a reasonable doubt. In support of this claim, Petitioner asserts that the prosecution failed to prove "the pistol in this case was capable of discharging a lethal projectivle [sic] or that Petitioner was in possession of that pistol." Petition, at 7. The OCCA rejected this same claim.

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993). For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting Jackson). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir.), cert. denied, 523 U.S. 1110(1998). In applying this standard, the court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer, 74 F.3d at 1013 (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of the crime. Jackson, 443 U.S. at 309, 324 n.16. The OCCA has determined that the elements of the crime of felon in possession of a firearm requires proof that the defendant "(a) knowingly and willfully (b) possess[ed] or ha[d] at his residence (c) any pistol or dangerous or deadly firearm which could be easily concealed, (d) and the defendant was convicted of a particular felony in a particular court on a particular date." Harmon v. State, 122 P.3d 861, 864 (Okla. Crim. App. 2005). The OCCA has expressly found that "[w]hether or not the pistol is capable of firing is not an element [of the offense of being a felon in possession of a weapon] that must be proven to sustain a conviction under [ Okla. Stat. tit. 21,] section 1283." Sims v. State, 762 P.2d 270, 272 (Okla. Crim. App. 1988).

The OCCA concluded that the evidence presented at Petitioner's trial was sufficient

11

to support his conviction. Although the evidence concerning possession of the pistol was circumstantial, the prosecution witnesses' testimony was sufficient to satisfy the elements of the offense under Harmon, supra. This testimony showed that Petitioner pulled the gun from his pocket, that he held the gun in his hand and stated his intent to use it, that he was observed hiding the gun in a bedroom of the residence, that police officers retrieved the pistol from under a bed in this location, and that Petitioner had a prior felony conviction. Even though the trial judge instructed the jury that the gun must have been "capable of discharging a projectile composed of any material which may reasonably be expected to be able to cause lethal injury....," (TR 137), evidence that the pistol was capable of discharging a lethal projectile was not necessary under Oklahoma law to support the conviction. Petitioner has not shown that the OCCA's decision was contrary to or an unreasonable application of the clearly-established Jackson standard. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

V. Prosecutorial Misconduct

In his third ground for habeas relief, Petitioner contends that prosecutorial misconduct during closing arguments denied him a fair trial. Petitioner points to only one statement by the prosecutor during closing arguments in which the prosecutor stated: "A .22 caliber [pistol] is kind of small, but probably lots of people have been killed with them." (TR 139). Petitioner's attorney did not object to this sentence, and the OCCA found that the statement did not "exceed the bounds of argument accepted by this Court during closing argument." Response, Ex. 3, at 2.

"In determining whether a petitioner is entitled to federal habeas relief for prosecutorial misconduct, it must be determined whether there was a violation of the criminal defendant's federal constitutional rights which so infected the trial with unfairness as to make the resulting conviction a denial of due process." Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974)), cert. denied, 515 U.S. 1122 (1995). Where the "challenged remarks do not implicate a specific constitutional right, [the habeas] Petitioner is entitled to habeas relief only if he can establish that the prosecutor's argument, viewed in light of the trial as a whole, resulted in a fundamentally unfair proceeding." Hooper v. Mullin, 314 F.3d 1162, 1172 (10th Cir. 2002), cert. denied, 540 U.S. 838 (2003).

When considered in the context of the prosecutor's entire closing argument, it is clear that the challenged statement was related solely to the jury instruction requiring proof the pistol was capable of being discharged. As previously found, this jury instruction was not an accurate statement of Oklahoma law concerning the elements of the offense of being a felon in possession of a firearm. Indeed, the prosecutor's statement did not specifically relate to the gun that was the focus of Petitioner's trial. The prosecutor merely posited that .22 caliber pistols in general have "probably" been used in "lots of" homicides. (TR 139). This innocuous statement did not unfairly prejudice Petitioner when considered in the context of the entire trial. Moreover, it is appropriate to consider the "strength of the state's case" in determining the issue of alleged prosecutorial misconduct. Coleman v. Brown, 802 F.2d 1227, 1237 (10th Cir. 1986). In this case, strong evidence of Petitioner's guilt was admitted

during the trial, and this one statement relating to an inaccurate evidentiary burden of proof did not render Petitioner's trial so fundamentally unfair as to deny him due process.

## VI. Cumulative Errors

In ground four of the Petition, Petitioner asserts, as he did in his direct appeal, that cumulative errors occurring at his trial denied him due process. Cumulative error analysis "applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998), cert. denied, 526 U.S. 1025 (1999). Here, no errors have been found, and therefore no cumulative error analysis is required. Petitioner has not shown that the OCCA's rejection of this same claim was contrary to or an unreasonable application of Supreme Court jurisprudence. Accordingly, Petitioner is not entitled to habeas relief concerning this claim.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by ___November 19th___, 2007, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned

Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___29th___ day of ___October___, 2007.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE